Eddie Mitchell TASBY, et al.,
Plaintiffs,

v.

Dr. Linus WRIGHT, General Superintendent, Dallas Independent School District, et al., Defendants.

No. CA–3–4211–H.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 26, 1985.

Edward B. Cloutman, III, Mullinax, Wells, Baab, Cloutman & Chapman, Dallas, Tex., for plaintiffs.

E. Brice Cunningham, Donald W. Hicks, Hill, Hicks, Collins & Joyner, Dallas, Tex., for intervenor Black Coalition to Maximize Educa.

Robert H. Thomas, Strasburger & Price, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

Before the Court are the following pleadings:

Motion to Withdraw and Entry of Appearance of Donald W. Hicks, Sr. and Donald W. Hill ("applicants"), filed September 30, 1985;

Response of Defendants Dallas Independent School District, et al., ("DISD"), filed October 17, 1985;

Defendants' Brief Regarding Intervention, filed November 1, 1985;

Intervenor-Plaintiff NAACP's First Amended Response to DISD's Response to Motion to Withdraw, filed November 4, 1985;

Plaintiffs' Reply to Intervenor-Plaintiff NAACP's Response, filed November 6, 1985; and

Motion Requesting Evidentiary Hearing, filed November 21, 1985, by the NAACP.

Applicants Hicks and Hill, who are currently assistant or co-counsel for Intervenor Black Coalition, seek to appear on behalf of the NAACP, which has not participated in this case since July 1982. The purpose of the Applicants' September 30 Motion is to reactivate the NAACP's dormant intervention.

By Order dated October 21, 1985, the Court directed Applicants to file "a pleading setting forth, specifically, how the position of the NAACP differs from the positions of Plaintiffs and Intervenor Black Coalition." The pleadings filed by Applicants do not satisfy the Court's directive. *See* Intervenor-Plaintiff NAACP's First Amended Response, filed November 4, 1985 ("Response"). A careful reading of the Response reveals that there is no difference between the legal interest of the NAACP and the Black Coalition, or between the legal interest of Plaintiffs and the NAACP.[1]

### Analysis

This case was originally filed in October 1970.[2] In 1975 the NAACP moved to intervene permissively; in August 1975 its Motion was granted. In January 1981 the Black Coalition to Maximize Education ("Black Coalition") intervened.[3]

---

**1.** *See Lelsz v. Kavanaugh,* 710 F.2d 1040, 1046 (5th Cir.1983); *Valley v. Rapides Parish School Board,* 646 F.2d 925, 941 (5th Cir.1981).

**2.** For a detailed procedural history, *see Tasby v. Wright,* 520 F.Supp. 683 (N.D.Tex.1983); and *Tasby v. Black Coalition to Maximize Education,* 771 F.2d 849 (5th Cir.1985).

**3.** It has not been asserted, nor is there any evidence in the record, that the interventions in this case have been anything but permissive. *See, e.g.,* Order of August 25, 1975, in which this Court (Taylor, J.) "permitted" the NAACP to file its plea of intervention.

■ The Court is called upon to decide whether an intervenor can revive an intervention after a long period of dormancy. That the Court has the power and authority to conduct such a review of intervention status is clear: intervention does not carry with it an absolute entitlement to continue as a party until termination of the suit. *Morgan v. McDonough,* 726 F.2d 11, 14 (1st Cir.1984) ("The district court needs the power to dismiss in order to manage complicated drawn-out proceedings efficiently").

■ To allow an original intervention the Court must have more than speculation or conclusory allegations as to the purported inadequacy of the existing representation. *Moosehead Sanitary District v. S.G. Phillips Corporation,* 610 F.2d 49, 54 (1st Cir. 1979). *See also, New Orleans Public Service v. United Gas Pipeline,* 732 F.2d 452, 470–72 (5th Cir.) (en banc) *cert. denied, Morial v. United Gas Pipeline,* — U.S. ——, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). Such has not been provided here. Moreover, the would-be intervenor must demonstrate adversity of interest, collusion or nonfeasance to show inadequacy. *Bush v. Viterna,* 740 F.2d 350, 355 (5th Cir.1984); *Martin v. Kalvar Corp.,* 411 F.2d 552 (5th Cir.1969). Such has not been shown here.

■ There is a substantial degree of identity between the NAACP, the Black Coalition and Plaintiffs. The Black Coalition and the NAACP share many members. Response at 9. The NAACP and the Black Coalition have "similar goals and objectives". Response at 11. The NAACP's only objection to the Black Coalition's representation is the "underfinanced (non-financed)" status of the Coalition. Response at 11. If the Applicants' Motion should be granted, the same lawyers would be before the Court. Messrs. Hicks and Hill, who now competently represent the Black Coali-

tion, would become local counsel for the NAACP. Mr. E. Brice Cunningham, who has in the past represented the NAACP and now ably represents the Black Coalition, would continue to represent the Coalition. (This has more the appearance of "musical chairs" than of intervention.) The Court concludes that the Black Coalition and the NAACP currently have virtually the same legal interests.

Plaintiffs and the NAACP also have similar legal interests. The NAACP's original motion to intervene stated that "[T]his Intervention is being brought by this Plaintiff on behalf of its Dallas membership and the children of such membership who are obligated by law to attend the Public Educational Institution operated by the Defendants and is brought on the behalf of all other Negro students similarly situated in Dallas, Texas." NAACP Motion to Intervene, filed August 5, 1975, at 2. Plaintiffs, a class of minority children and their parents, and the Black Coalition also represent these individuals.[4] The Court (Taylor, J.) specifically found when the NAACP first intervened that the Plaintiffs adequately represented the class. Transcript, August 21, 1975; Hearings on Motions to Intervene, at 82.[5] The Court now specifically affirms that finding and also finds that the plaintiff class is well represented by its counsel, Mr. Cloutman. *See Tasby v. Wright,* 585 F.Supp. 453, 454 n. 1 (N.D.Tex. 1984); *Tasby v. Black Coalition,* 771 F.2d at 855. Inadequacy of representation is not a factor here.

■ The Court also finds that it would be prejudicial to allow reactivation of the dormant NAACP intervention. The prejudice includes:

(1) the unnecessary cost to the Defendants of defending against additional parties, including possible attorney's fees for intervenors, *Garrity v. Gallen,* 697 F.2d 452, 457 (1st Cir.1983);

---

**4.** *See* Motion to Intervene of the Black Coalition to Maximize Education, filed November 10, 1980, at 2.

**5.** Judge Taylor commented at that hearing that "the Court would assume, of course, that your [NAACP] interest, your client's [NAACP's] inter-

est are virtually identical with the interest of the plaintiffs and their attorneys...." Transcript, August 21, 1975, at page 14, lines 14–17. Plaintiffs Tasby, et al., represent black and hispanic students. *Tasby v. Wright,* 585 F.Supp. at 689.

(2) the reduced control over the lawsuit that flows from adding additional parties, *New Orleans Public Service, Inc. v. United Gas Pipeline*, 732 F.2d at 473;

(3) the inevitable delay that goes with adding parties, *Bush v. Viterna*, 740 F.2d at 359 ("additional parties always take additional time"); and

(4) the possibility, perhaps likelihood, that other dormant intervenors, and there are many [6] will ask for reactivation if the NAACP intervention is revived.[7]

The court turns now to the Motion Requesting Evidentiary Hearing, filed November 21, 1985. The primary emphasis of the Motion is on the concerns of Hispanic students in the DISD.[8] In its Response the NAACP raises matters of contracting and purchasing opportunities for minorities in the DISD, subjects inappropriate for this school desegregation case. In any event, as the Court has already found, Plaintiffs and the Black Coalition adequately represent the class of minority students and their parents in the DISD, have the same legal interests as the NAACP in this litigation, and are aware of and competent to represent the NAACP's legal interests before the Court. No evidentiary hearing is necessary. *U.S. v. Crucial*, 722 F.2d 1182, 1190–91 (5th Cir.1983).

### Conclusion

The Court's task at this stage of this 15-year old litigation is to monitor its January 1982 Judgment, and the amendments thereto, to the end that the DISD will be declared unitary. The Court recognizes,

and certainly does not minimize, the long and valiant struggle which the NAACP has waged for generations against racial segregation. But that is not a sufficient basis for reviving its slumbering intervention. The posture of this case has changed substantially since the NAACP was granted permission to intervene in 1975. The NAACP cannot bring to this case at this juncture any undeveloped or inadequately represented germane point of view.[9]

In sum, it would not serve the interests of justice to now expand this litigation by reviving dormant interventions. Accordingly, the Motion to Withdraw and Entry of Appearance, filed September 30, 1985, is **DENIED**; the Intervention of the NAACP is **STRICKEN**; and the November 21, 1985, Motion Requesting Evidentiary Hearing is **DENIED**.

SO ORDERED.

---

**6.** A sample list of dormant intervenors includes Dallas Alliance, City of Dallas, North Dallas (Curry) intervenors, East Dallas (Brinegar) intervenors, and Oak Cliff intervenors. What constructive purpose would be served by tempting such intervenors to return to this fray?

**7.** The Fifth Circuit has noted in a similar permissive intervention situation that a third party which presents no new questions can contribute by a brief amicus curiae. *Bush v. Viterna*, 740 F.2d at 359.

**8.** The NAACP intervened in 1975 to represent "its Dallas membership and the children of such membership ... [and] all other Negro students...." *See supra.*

**9.** Procedurally, the Court has decided the matter before it as though the NAACP were now moving to intervene per Fed.R.Civ.P. 24(a)(2). For the reasons set forth above such a motion would be denied. The same reasons dictate striking the dormant 1975 intervention.